May it please the court, counsel. My name is Jennifer Lassie with the Office of the State Appellate Defender, and I represent the defendant appellate Vinnie Wilson. The only issue here is whether the trial court erred by dismissing Vinnie Wilson's petition at the first stage of proceedings and by failing to advance it to the second stage. At the first stage, a petition can only be dismissed if it is frivolous or patently without merit. A petition is frivolous or patently without merit only if it is based on an indisputably meritless legal theory or a fanciful factual allegation or completely contradicted by the record. Vinnie's petition was none of these things, and it should have advanced to the second stage. First, the state argues that Vinnie did not include allegations that his rights were violated under the Eighth Amendment and the Illinois Proportionate Penalties Clause. However, this is not the case. Though Vinnie made arguments that the automatic transfer statute, which transfers juveniles to adult courts, was unconstitutional, he also made arguments that his youth should have been considered as sentencing and that the sentencing court's failure to consider his youth and its attendant characteristics resulted in a violation of the Eighth Amendment and the Illinois Proportionate Penalties Clause. In his petition, he cited Miller, Roper, and Graham, and he discussed how juveniles are constitutionally different than adults for the purposes of sentencing and how juveniles are less culpable and less deserving of severe punishment and have greater rehabilitative potential. In his petition, he requested a new sentencing hearing where his youth could be considered. At this point in the proceedings, it is at least arguable that his 30-year sentence violated the Eighth Amendment and the Illinois Proportionate Penalties Clause. The sentencing court never considered Vinnie's youth or his rehabilitative potential when it sentenced him to the 30-year sentence. A 30-year sentence was arguably a cruel and unusual punishment in this case where Vinnie was 16 at the time, acted under Michelle Riley, who was the ringleader, who encouraged others in the household to abuse Dixon, and who would have punished others if they did not harm Dixon. Additionally, Vinnie was in special education classes and had only made it to the 10th grade and had a learning disorder. Where his youth and his attendant circumstances were not considered at sentencing, this was an arguable Eighth Amendment violation, and his petition should have advanced to the second stage. The state argues that the Illinois Supreme Court's recent decision to buffer the Supreme Court's recent decision, drawing the line at 40 years for de facto life sentences, to argue that Vinnie's Eighth Amendment argument now lacks merit. However, buffer opens as many doors as it closes for juvenile defendants. Juvenile defendants who pre-buffer, pled guilty after having been told that they faced a natural life sentence, may now have claims that they would not have pled guilty in light of buffer, which held that anything in excess of 40 years is a de facto life sentence. And as we know from Miller, Roper, and Graham, only the most incorrigible juvenile defendant may get a natural life sentence. So again, buffer opens as many doors as it closes. Vinnie also alleged an arguable Proportionate Penalties Clause violation, which provides defendants with more extensive protections than an Eighth Amendment violation. The Proportionate Penalties Clause guards against cruel and degrading sentences and requires sentencing courts to consider the seriousness of the offense along with the objective of restoring an offender to useful citizenship. The sentencing court here did not consider Vinnie's youth, and it failed to consider his rehabilitative potential. At sentencing, it's clear that the court did not view Vinnie as the 16-year-old child that he was when he committed this crime. The court told Vinnie it was time for him to be a man. Both defense and the state agreed that there were no mitigating factors at sentencing. And the only mitigating factor that the sentencing court found was that Vinnie did not have a lengthy criminal history. And the court seemed to imply that had Vinnie been older, his history would have been longer. In fact, the sentencing court said that Vinnie's youth could be a factor in mitigation or aggravation. Thus, it's clear that Vinnie's learning disorder, his behavioral problems, his IQ of 86, and his age of 16 were not considered by the sentencing court at the time his sentence was imposed. The threshold for passing the first stage is very low, and this is because most petitions are drafted by pro se defendants with little legal knowledge or training. It is undeniable that Vinnie, who left school in the 10th grade, was in special education classes, and had a learning disorder, falls into this category. Petitions at this stage must be given a liberal construction, and courts are to use a lenient eye, allowing borderline cases to proceed. This is Illinois law. Petitions at the first stage do not have to have formal arguments or citations, and petitioners at the first stage do not have to prove, demonstrate, or show a constitutional violation to any extent. They only need to allege enough facts to show that they have an arguable constitutional claim. Vinnie's petition did just this, and because of this, the trial court erred in dismissing his petition at the first stage. And unless your honors have any questions, Vinnie would request that this court reverse and remand for second stage proceedings. Thank you. Mr. Daley? Good morning, Your Honors. May it please the court, counsel, my name is- Mr. Daley, go ahead. My name is Patrick Daley here on behalf of the state for the record. Your Honor, I'm about to ask a question. I apologize. No, that's fine. Ms. Leslie indicated that the standard is an arguable constitutional claim. Is it perhaps even lower than that? It's actually just a gist. Just a gist. And, you know, one of the difficulties for the state, obviously, in any type of case like this is because that threshold is very low. And if you look at the evolution of post-conviction law, the Supreme Court has whittled it down and down and down to the point where you really just have to make an allegation. I think that what this case kind of comes down to, and I want to start a little bit with the Parker case, the defendant cites it in his reply brief, because I think that's maybe an interesting starting point here, because I think the question now is what meets or constitutes a claim or what isn't a claim? And this Court sits like the trial court does. It's de novo review. So it's going to review this petition as much as a trial court would without necessarily any deference to the trial court's ruling on it. When we look at this appeal, and we start with Parker, Parker deals with a somewhat analogous set of facts involving a guilty plea, a cap, which fell below the buffer line, if you will. But there was admonishments made about the potential natural life sentence. And there was a proposition of the defendant, but for having knowledge of our Miller, et cetera, case law, may not have entered into a guilty plea. So I think it's probably not a bad case for the defendant in this particular situation, but I also think it sort of begs the question, what is the claim? All right. What we have here has been a kind of shifting claim. At the trial court level, the claim was that the automatic transfer statute was unconstitutional. Defendant is right, or excuse me, counsel is right that the defendant cites Miller, Graham, Roper, et al. in the context of a challenge to the constitutionality of the automatic transfer claim statute, and that that involved defendants' arguments below at the trial court level that these special considerations given to juvenile defendants should have been part and parcel of the process of automatic transfer. On appeal, defendants as well, we've cited Roper, Graham, and Miller below. That provides, you know, that's the gist, if you will, of the claim, which means here we're going to argue that the sentence itself is unconstitutional under Miller, Roper, Graham, et cetera, because it's a de facto natural life sentence. Buffer comes out and says, well, no, your eighth amendment claim is only viable if it's above 40 years. But, I mean, isn't that part of the point, though, on the shifting argument that had counsel been appointed at the filing of this that perhaps the amended post-conviction condition would have included some of these things that the state now claims are forfeited? Well, I think I was kind of mulling this through my mind before argument, and I kind of came up with, I think, there's four scenarios here, one of which is it's either we evaluate the claim based on what the defendant argues, or we're going to look at the defendant's buffer or pre-buffer argument, or we're going to look at the Parker argument, or, finally, is it just simply do we put Graham, Roper, Miller in a post-conviction petition, and then we get up on appeal the arguable basis, the gist, that anything is any argument that, you know, very intelligent appellate counsel can come up on appeal and say, well, this is kind of what the gist of this argument is. Well, what's the gist of the argument? The gist of the argument is we've gone sort of far astray at this point from what the defendant originally argued, his post-conviction petition. But aren't we, even with just looking at his post-conviction petition, if we just stop there. Correct. Aren't we to look at whether that raised the gist of the constitutional argument? Absolutely. And it is definitely the law that you give post-conviction petitions a liberal construction. And therein is the rub in this case, where or what is a liberal construction. If the threshold for post-conviction is so low that the mere indication of Miller, Graham, Roper in a post-conviction petition allows on appeal to sort of hardly any feasible argument that has as its roots Miller and Parker, then we've gone probably below gist. How can you make that argument if the record itself talks about, you know, there's got to be a man here and there was a stipulation as to no mitigating. I mean, this is all in the record. So when he says that he cites these cases about the automatic transfer statute, I mean, there is stuff in the record that kind of supports that. Well, what you're saying right now, Your Honor, I think it kind of goes towards the Eighth Amendment argument. But the Eighth Amendment argument is not viable anymore post-Buffer, because it's not a de facto natural life sentence. See? And that's why I kind of draw out these, like, four scenarios, because what we've gone from is a challenge to the transfer to an Eighth Amendment challenge on appeal. Well, then Buffer comes out and says, well, okay, well, now you wouldn't have pled guilty but for this or that. But the defendant's never even hinted at that kind of argument. So where is the line going to be drawn before we start saying, well, the defendant has met this low threshold simply by invoking Rover? And then, you know, as an appellate counsel, skilled appellate counsel, or appellate court justice as well versed in the law could say, well, that could mean this or that could mean that. You know, it sort of obliterates the waiver rule, which has been applied routinely by the Supreme Court to first-stage post-conviction petitions. So where do we draw the line? That's really the question before the court. And obviously the state's position is this. You know, we respond to the defendant's argument. The defendant's argument, well, he's got a cognizable Eighth Amendment claim, unless, among other reasons, it's indisputably and legally meritless. Now it is. So now, on a reply brief, we say, well, like Parker has now received a reply in this plea context. Well, again, we're getting this shift. So what I'm asking this court to find, and really it all starts with the claim, when we did our count of appeals, well, this is all this argument that the Eighth Amendment claim was forfeited, was a challenge to the automatic transfer statute. And I think that my argument here is at least as applicable, if not more so, to the constitutional challenge of the Illinois Constitution and the proportionate penalties clause. I understand the defendant's position that, well, you know, a lot of the state's argument relates to the arguments that are going to be made like an emotional dismiss. And while that's generally true, it's also the fact that a court on initial review of post-conviction petitions is allowed to draw from the record to make these determinations of factual lack of merit. This is an instance where, again, in the de novo review, this court is sitting as a court like a trial court would. It has the full record. It has the plea. It's a very extensive plea. There's a lot of information that was generated or presented to the court for its consideration about the defendant's background, psychological and educational background. There's little doubt that he was in a terrible home environment, much of which the court was aware of. There's also a lot of information before court, however, that the acts that he, this defendant, perpetrated were heinous and terrible. This was a negotiated plea to a cap for a sentence that fell well below that, which is really not a lot below the minimum of 20. This is a defendant who is met no challenge. It is a voluntary plea. There's little doubt in the record about the horrific nature of the crime. A court can review these facts and make, I think, a fairly defensible conclusion that this is not a type of sentence that is going to be shocking to the moral conscience of the community. A near-minimum sentence negotiated for an act that would probably, in other scenarios, for people who are in less, perhaps, volatile or terrible circumstances as the defendant was in, would be substantially higher, if not much, much higher. So it's not a matter of, again, well, we can make these arguments better later. It's a matter of the court is allowed at that first stage to look at the record and say, no, there's nothing about this, given the only thing that's missing from the defendant's perspective is that, well, there wasn't more developed about the defendant's youthful circumstances. But again, what we're looking at here is the nature of the crime versus amount of evidence that was presented about this defendant's background and educational background. And these are the type of evaluations that a court is permitted to make and find it as a factual basis on which the defendant is seeking constitutional claims and remedies. Does the Court have any questions? I thank you for your time. Thank you, Mr. Daly. Your Honors, first, I would like to address, yes, the defendant must only allege the gist of a constitutional violation. The Court and the State are correct on that point. And we note that in the opening brief. I think case law expands on that and explains that that means all you must do is show that there's an arguable basis in either fact or law. But, yes, the threshold here is very low for pro se petitioners. Next, I want to note that we are – Benny is not shifting his claim from the trial court to appeal to the reply. There's no shift in the claim. In Benny's pro se petition on page 233 of the record, he argues that juveniles are constitutionally different from adults for purposes of sentencing and they have less than culpability and are less deserving of the most severe punishments. On that same page, he talks about how Illinois law prohibits consideration of offenders' youth and its attendant characteristics. On page 234, he talks about Miller, Graham, and Roper collectively suggest that no juvenile, regardless of his offense, may receive the same mandatory sentence set for adults without any opportunity to present evidence that he does not deserve an adult sentence. Let's see. Does he claim that he would not have been guilty? He does not, Your Honor, and we don't argue that on appeal. So on – just one more thing I want to point out. On page 237, he asks for a new sentencing hearing where adult penalties are discretionary. Does he have to say that he would not have pled guilty under the circumstances in order to raise his claim? No, Your Honor. I think he does not have to withdraw his plea at this point. So at this point, all he has to do is allege the gist of a constitutional violation. And the whole – yeah, and the whole of his petition is that his youth should have been considered at sentencing. When you look at his petition as a whole, that's what he's arguing for. His youth should have been considered, and it wasn't. And we can look at the record and know that's true because the trial court, when sentencing him, explicitly stated that there were no mitigating factors other than his lack of a criminal history. And the court noted that if he were older, the criminal history would have been longer, which tends to go against what all these juvenile cases tell us about juveniles having greater rehabilitative potential. So we are not shifting the claim and arguing a new claim that Benny would have withdrawn his plea. We are merely responding to the State's argument regarding buffer in its response brief. In its response brief, the State claimed that buffer shuts down Benny's Eighth Amendment claim. First of all, that's jumping to the merits, the ultimate merits, which we don't decide at the first stage. That's something that might happen after counsel is appointed at the second stage, but that's premature for this point in the proceedings. So that's my first argument. The State's jumping to the ultimate merits of whether these claims will prevail, and that's just premature. And next, we're just responding to the argument the State raised. If the State wants this court to consider that buffer says anything in excess of 40 is de facto life, so Benny's 30-year sentence must not be an Eighth Amendment violation, well, it opens the door to many other questions in light of buffer. Would defendants who are told that they're faking a natural life sentence or the death penalty, would they plead guilty in light of buffer's rule that anything in excess of 40 years is a de facto life sentence? These are things that I think, if we're going to argue buffer is to be considered, these are things that must also be considered. So Benny is not making a new claim. There is not a shifting of claims. The claims raised in his opening brief are those raised in his pro se petition. And, again, at the first stage, it's a very low threshold, and his petition shouldn't have advanced to the second stage. Did your honors have any additional questions? No. Thank you. He would respectfully request that you reverse and arrange for a second stage proceedings. Okay. Thank you very much. Okay. 517-322, Benny Wilson, will be taken under five minutes for the word of adjudication.